UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERICK BERNABE HERNANDEZ GARCIA, Plaintiff,<br><br>-v-<br><br>RAUL MALDONADO, JR., *et al.*, Defendants. | 26-CV-9609 (JPO)<br><br><u>MEMORANDUM AND ORDER</u> |

J. PAUL OETKEN, District Judge:

Petitioner Erick Bernabe Hernandez Garcia filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), arguing that his apprehension and detention by Immigration Customs and Enforcement ("ICE") are unlawful under various statutes and regulatory provisions, as well as the Due Process Clause of the United States Constitution. (*See generally* ECF No. 1.) Garcia therefore seeks a writ of habeas corpus ordering Raul Maldonado, Jr., Markwayne Mullin, and Todd Blanche (collectively, "Respondents") to immediately release hm from custody. (*Id.*) For the reasons that follow, the Petition is granted.

## I. Background

### A. Factual Background

Except where otherwise noted, the following facts are undisputed. Petitioner Erick Bernabe Hernandez Garcia is a thirty-three-year-old native of El Salvador. (ECF No. 1 ("Pet.") ¶¶ 1, 18, 22.) Garcia was encountered by border patrol officer near Ysleta, Texas on or about May 4, 2022, and he was subsequently removed from the United States through the Ysleta Port of Entry. (ECF No. 20 ("Opp.") at 6.) Garcia then re-entered the United States without inspection sometime thereafter. (Pet. ¶¶ 2-3, 22.) Since his re-entry, Garcia has been gainfully employed and created a meaningful community in New York, where he has an established

residence. (*Id.* ¶¶ 9, 23.) Garcia has never been arrested or convicted of a crime, including since he entered the United States. (*Id.* ¶¶ 4, 24.) There is no final order of removal against Garcia. (*Id.* ¶ 8; *see also* ECF No. 12 at 2.)

On October 27, 2026, at approximately 12:21pm, an ICE enforcement officer issued a Form I-862 Notice to Appear ("NTA"), which charged Garcia as inadmissible under the Immigration and Nationality Act ("INA"). (Opp. at 7; *see also* ECF No. 19-2.) The NTA directed Garcia to appear before an immigration judge on November 10, 2026, at 8:00 am. (ECF No. 19-2.) That same day, at 12:22 pm, another ICE officer issued a Form I-200, which determined that there was probable cause to believe that Garcia was removable from the country based on biometric confirmation of Garcia's identity. (Opp. at 7-8; *see also* ECF No. 19-3.)

On October 28, 2026, at approximately 5:50 am, Garcia and his brother were stopped by ICE officers in Shirley, New York while driving to work. (Pet. ¶¶ 5, 26; Opp. at 8.) Garcia was then processed and temporarily held in the basement holding cells of the Alfonse M. D'Amato U.S. Courthouse in Central Islip, New York. (Pet. ¶ 27.) An ICE officer then served Garcia with the Form I-200 and NTA that had been issued against him. (Opp. at 9.) Respondents claim that ICE officers then "conducted an interview to obtain information" about Garcia before making "an individualized initial custody determination" as to him. (*Id.*) Afterwards, at 9:57 am on October 28, 2026, ICE issued and served Garcia with a Form I-286, which stated that Garcia would remain detained during his removal proceedings. (*Id.*; *see also* ECF No. 19-5.) At 11:00 am, an ICE officer completed an initial *Velesaca* worksheet, which "provided that Petitioner was not subject to 8 U.S.C. § 1226(a)." (Opp. at 9; *see also* ECF No. 19-4.) At 4:13 pm, Respondents claim that ICE officers realized this initial determination that Garcia was not subject to detention under § 1226(a) was erroneous, and thus completed a second *Velesaca*

worksheet, which now stated that Garcia "posed a flight risk and would remain detained pursuant to 8 U.S.C. § 1226(a)." (Opp. at 10; *see also* ECF No. 19-4.)

At approximately 8:09 pm, Garcia was relocated to 26 Federal Plaza, New York, New York, which is where he was at the time that the instant petition was filed. (Opp. at 10; *see also* ECF No. 8 at 1.) At 10:00 pm, Garcia was again relocated to Delaney Hall Detention Facility in Newark, New Jersey. (Opp. at 11; *see also* ECF No. 8 at 1; ECF No. 12 at 1.) On November 6, 2026, Garcia was transferred from Delaney Hall to the Metropolitan Detention Center in Brooklyn New York, where he is currently detained. (ECF No. 18 ¶ 29.)

On October 30, 2026, ICE served Garcia with a superseding NTA dated October 29, 2026. (Opp. at 11; *see also* ECF No. 19-2.) ICE filed that superseding NTA, thereby commencing removal proceedings against Garcia. (*Id.*) On November 2, 2026, Garcia requested a custody redetermination hearing. (Opp. at 11; *see also* ECF No. 18 ¶ 28.) Garcia is scheduled for a bond hearing on November 16, 2026. (Opp. at 11; *see also* ECF No. 19-6.)

**B. Procedural History**

Garcia filed this petition on October 28, 2026 in the Eastern District of New York. (Pet.) On October 29, 2026, Judge Orelia E. Merchant of the Eastern District of New York issued an Order to Show Cause, directing Respondents to show cause as to why the Petition should not be granted by November 3, 2026, and directing the parties to appear before the Court on November 4, 2026. (ECF No. 3.) On October 30, 2026, the parties submitted a motion to transfer venue to the Southern District of New York via consent stipulation because Garcia was in this District at the time that the Petition was filed. (ECF No. 7.) Judge Merchant issued an order granting the parties' joint motion to transfer that same day. (ECF No. 8.)

This case was then transferred to this Court on November 3, 2026. (ECF No. 9.) That same day, this Court issued an Order to Answer, directing (1) Respondents to file a letter with

information about Garcia's status; (2) Respondents to answer the Petition; (3) Alvarez to file any reply; and (4) both parties to attend a telephonic conference on November 9, 2026. (ECF No. 10.) To preserve its jurisdiction, the Court also ordered that Garcia not be removed from the United States. (*Id.* at 2 (citing *Khalil v. Joyce*, No. 25-CV-1935, 2025 WL 750599, at *1 (S.D.N.Y. Mar. 10, 2025)).)

Respondents filed a letter in response to the Order to Answer on November 4, 2026. (ECF No. 12.) Respondents then filed a response in opposition to Garcia's habeas petition on November 9, 2026 (ECF No. 19), accompanied by a supporting declaration (ECF No. 18) and memorandum of law (Opp.). The Court then held a telephonic conference with the parties on November 10, 2026.

## II. Discussion

The Petition raises several challenges to Garcia's arrest and detention. Because the Court concludes that Garcia received insufficient process prior to his detention, the Court need not address the other grounds raised in the Petition.

"[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens."). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Velasco Lopez*, 978 F.3d at 850 (citing *Boumediene v. Bush*, 553 U.S. 723, 781-83 (2008)). Accordingly, where the government fails to provide the process required by the relevant statutes and regulatory provisions—such as "where there is no evidence of a sufficient individualized assessment" when the "petitioner is detained under § 1226(a)"—"the petitioner's detention

violates the Due Process Clause," and "Respondents must release him from detention." *C.A.R. v. Genalo*, No. 26-CV-4275, 2026 WL 1506417, at *2 (S.D.N.Y. May 29, 2026) (cleaned up).

**A. Administrative Exhaustion**

At the outset, Respondents ask that the Court delay its adjudication of the Petition until Garcia's upcoming bond hearing before an immigration judge, as Garcia should be required to exhaust his administrative remedies prior to resorting to judicial relief. (Opp. at 18-21.) The Court disagrees.

Administrative exhaustion in the immigration detention context "is not a statutory requirement." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 496 (S.D.N.Y. 2025) (quotation marks omitted). As a result, "courts in this Circuit may excuse exhaustion where," *inter alia*, "available remedies provide no genuine opportunity for adequate relief," and "a plaintiff has raised a substantial constitutional question." *Id.* (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.), *as amended* (July 24, 2003)).

Both exceptions apply here. First, as discussed below, Garcia's ongoing detention operates in violation of constitutional due process and therefore raises a substantial constitutional question. *See id.* at 497-98. Second, Garcia's access to a hearing before an immigration judge does not remedy ICE's failure to provide an individualized custody determination prior to his detention. *See Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 396 (S.D.N.Y. 2026) ("The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." (quotation marks omitted)). Thus, Garcia "is excused from exhausting administrative remedies." *Lopez Benitez*, 795 F. Supp. 3d at 498.

### B. Detention Under § 1226(a)

Moving to the heart of the dispute, Respondents contend that Garcia's detention is lawful under 8 U.S.C. § 1226(a). (*See* ECF No. 12 at 1; Opp. at 14-16.) Section 1226(a) provides that, "pending a decision on whether [an] alien is to be removed from the United States," the Attorney General "may . . . detain" the noncitizen or "may release" the noncitizen on "bond" or "conditional parole. 8 U.S.C. § 1226(a). While this language vests broad authority in the executive to arrest and detain noncitizens, "due process must account for the wide discretion that Section 1226(a) vests in the Government to arrest *any* person in the United States suspected of being removable." *Reyes v. King*, No. 19-CV-8674, 2021 WL 3727614, at *6 (S.D.N.Y. Aug. 20, 2021). Specifically, ICE officials "must make an individualized determination as to the appropriateness of detention based on two factors—whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'" *Lopez Benitez*, 795 F. Supp. 3d. at 493 (quoting 8 C.F.R. § 1236.1(c)(8)).

Importantly, courts in this District have recognized that for ICE "[t]o lawfully detain a noncitizen under § 1226(a), the government is required—at minimum—to exercise its discretion and make an individualized custody determination *before* detaining the person." *J.T.G. v. Genalo*, No. 26-CV-4521, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026) (emphasis added); *see also Sidqui*, 823 F. Supp. 3d at 390 ("Prior to the Government exercising its discretion to detain a person, § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination." (quotation marks omitted)); *Tumba v. Francis*, 813 F. Supp. 3d 394, 406 (S.D.N.Y. 2025) (requiring "individualized assessment *before* detaining" petitioner (quotation marks omitted)); *Lopez Benitez*, 795 F. Supp. 3d at 492-93 ("[B]efore the Government may exercise such discretion to detain a person, § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination." (quotation

marks omitted)); *Pallo v. Catletti*, No. 26-CV-6128, 2026 WL 2620565 (S.D.N.Y. Sep. 4, 2026) ("Under § 1226(a) and its implementing regulations, ICE officials, before detaining a noncitizen under that authority, must make an individualized custody determination and thereafter make available a bond hearing." (quotation marks omitted)).[1]

The record makes clear that ICE made no such individualized custody determination with respect to Garcia *before* he was detained. Garcia was arrested on October 28, 2026, at 5:50 am. (ECF No. 19-4 at 2.) An initial custody determination worksheet, signed by an ICE officer nearly six hours later at 11:35am, conveys that Garcia was "NOT subject to § 236(a)" and in no way suggests that ICE determined Garcia to be a flight risk or danger to the community. (*Id.* at 2-3.) Accordingly, six hours into Garcia's detention, ICE "was confused about the detention authority" and did not think Garcia's circumstances would "subject [him] to detention under 8 U.S.C. § 1226(a)." (ECF No. 18 ¶ 15.) That ICE had not yet settled on § 1226(a) as the governing detention authority undercuts Respondents' suggestion that ICE had performed the requisite deliberation of potential flight risk and danger to the community under § 1226(a) *before* Garcia's detention. Rather, the record reflects that, at the time of Garcia's arrest, ICE had not yet

---

[1] To the extent that Respondents contend *Tambriz v. Blanche*, No. 26-CV-4247, 2026 WL 1662129 (S.D.N.Y. June 9, 2026), provides the Government with a 48-hour grace period to divine a post-hoc rationale for detention under § 1226(a) (*see* Opp. at 17, 20), they are mistaken. In *Tambriz*, Judge Furman denied habeas relief because the respondents there had *already* "made an individualized determination to detain him when they filed a detainer upon his detention by New York State." *Tambriz*, 2026 WL 1662129, at *1. *Tambriz* then cited *Vizhco Chunchi v. Francis*, for the proposition that "[t]he fact that ICE lodged a detainer against [the petitioner] after his arrest by the police suggests that ICE engaged in individualized assessment before detaining him." *Id.* (quoting No. 25-CV-10249, 2026 WL 249676, at *3 (S.D.N.Y. Jan. 30, 2026)). Thus, *Tambriz* does not cast doubt on the established consensus in this District that custody determinations pursuant to § 1226(a) must be undertaken *prior* to detention. *See, e.g.*, *J.T.G.*, 2026 WL 1724325, at *4.

decided the authority for his detention and consequently failed to provide the individualized custody analysis required by § 1226(a) and due process. *See J.T.G.*, 2026 WL 1724325, at *4.

To be sure, Respondents resist this conclusion. First, Respondents claim that after ICE completed the first custody determination worksheet, ICE realized it was a mistake and rectified it in a subsequent worksheet, signed by the same ICE officer at 4:13pm. (*See* Opp. at 15; ECF No. 19-4 at 4-5.) True enough, the second custody determination worksheet, completed over ten hours after Garcia's arrest and detention, establishes that ICE then determined Garcia to be a danger to the community (with no further explanation) and to be a flight risk, because, *inter alia*, Garcia does not have a wife or children and failed to register as an alien under the relevant statutes. (*Id.*) But Respondents misunderstand the relevant inquiry; the question is whether ICE undertook the individualized custody determination *before* it detained Garcia. *See Lopez Benitez*, 795 F. Supp. 3d at 492-93. Thus, even under Respondents' version of events, the requisite custody determination transpired ten hours after Garcia's detention and was therefore ten hours tardy.

Second, Respondents contend that the executed Form I-286 that greenlit detention under § 1226(a) demonstrates that ICE undertook the requisite custody determination before Garcia was detained. (*See* Opp. at 15; ECF No. 19-5.) But the Form I-286, signed at 9:57 am on October 28, 2026, four hours *after* Garcia's detention, provides no support for the proposition that ICE contemplated Garcia's risk of flight or danger to the community *before* he was detained. (ECF No. 19-5.) Indeed, the Form I-286 is boilerplate, executed with two signatures and one box tick; it has no space for the purported individualized determination and contains no explanation thereof. (*Id.*) The Court declines Respondents' invitation to presume compliance with constitutional due process based on so few after-the-fact strokes of a pen, particularly when

the record shows that ICE remained "confused" as to what statute governed Garcia's detention, and consequently, what process he was owed. (*See* ECF No. 19-4.)

Ultimately, Respondents provide nothing but conjecture to suggest that ICE performed the custody determination required by § 1226(a), its implementing regulations, and constitutional due process. Accordingly, "there is no evidence of an individualized assessment sufficient to qualify as a valid exercise of discretion," so Garcia's detention "violates the Due Process Clause," and he "must be released" immediately. *Yang v. Almodovar*, No. 25-CV-10265, 2025 WL 3678644, at *2 (S.D.N.Y. Dec. 18, 2025) (quotation marks omitted).

**III. Conclusion**

For the foregoing reasons, the petition for a writ of habeas corpus is GRANTED.

Respondents are hereby ORDERED to immediately release Garcia from custody. Respondents shall certify compliance with this Order by filing an entry on the docket no later than 3:00 pm on November 13, 2026.

SO ORDERED.

Dated: November 13, 2026
New York, New York

J. PAUL OETKEN
United States District Judge